IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW STEELE, derivatively on behalf of ABBOTT LABORATORIES, <br><br> Plaintiff, <br><br> v. <br><br> LORI J. RANDALL, KEENAN S. GALE, TJ HATHAWAY, ROBERT J. ALPERN, M.D., ROXANNE S. AUSTIN, SALLY E. BLOUNT, PH.D., PAOLA GONZALEZ, MICHELLE A. KUMBIER, DARREN W. McDEW, ROBERT B. FORD, NANCY McKINSTRY, WILLIAM A. OSBORN, MICHAEL F. ROMAN, DANIEL J. STARKS, JOHN G. STRATTON, GLENN F. TILTON, ROBERT E. FUNCK, JR., JOSEPH MANNING, and CHRISTOPHER J. CALAMARI, <br><br> Defendants <br><br> -and- <br><br> ABBOTT LABORATORIES, <br><br> Nominal Defendant. | Case No. 1:25-cv-03669 <br> Hon. Sunil R. Harjani |

**NOMINAL DEFENDANT ABBOTT LABORATORIES'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**Table of Contents**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND .................................................................................................2

    A. Plaintiff Files a Derivative Complaint Alleging Demand Futility and Unsuccessfully Seeks to Be Appointed Lead Plaintiff .............................................2

    B. After Losing His Motion for Lead Plaintiff, Plaintiff Ignores the Court's Order and Files a New Action—This Time Alleging Demand Refusal .................3

III. ARGUMENT ..........................................................................................................................5

    A. Plaintiff's Complaint Should Be Dismissed as Premature ......................................6

    B. Plaintiff's Complaint Should Be Dismissed Because It Fails to Allege Particularized Facts That the Board Deferred in Bad Faith.....................................7

    C. Plaintiff's Complaint Should Be Dismissed Because He Cannot Plead Demand Wrongfully Refused After Previously Alleging Demand Futility ..........10

IV. CONCLUSION.....................................................................................................................11

## Table of Authorities

### CASES

*In re Abbott Depakote S'holder Deriv. Litig.*,
909 F. Supp. 2d 984 (N.D. Ill. 2012) .................................................................................. 5

*Boeing Co. v. Shrontz*,
1992 WL 81228 (Del. Ch. Apr. 20, 1992) ......................................................................... 11

*Dahle v. Pope*,
2020 WL 504982 (Del. Ch. Jan. 31, 2020) ........................................................................ 11

*Drachman v. Cukier*,
2021 WL 5045265 (Del. Ch. Oct. 29, 2021) ..................................................................... 10

*In re Kraft Heinz Demand Refused Deriv. S'holder Litig.*,
2024 WL 3493957 (Del. Ch. July 19, 2024) ....................................................................... 7

*Levine v. Smith*,
591 A.2d 194 (Del. 1991) .................................................................................................... 5

*Lowinger v. Oberhelman*,
2017 WL 1224524 (C.D. Ill. Mar. 31, 2017) ....................................................................... 6

*Lowinger v. Oberhelman*,
924 F.3d 360 (7th Cir. 2019) ....................................................................................... passim

*MacCoumber v. Austin*,
2004 WL 1745751 (N.D. Ill. Aug. 2, 2004) ..................................................................... 6, 8

*McSparran v. Larson*,
2007 WL 684123 (N.D. Ill. Feb. 28, 2007) ......................................................................... 5

*Miller v. Loucks*,
1992 WL 329313 (N.D. Ill. Nov. 5, 1992) ..................................................................... 5, 11

*In re Oracle Corp. Deriv. Litig.*,
808 A.2d 1206 (Del. Ch. 2002) ........................................................................................... 9

*Piven v. Ryan*,
2006 WL 756043 (N.D. Ill. Mar. 23, 2006) ................................................................ 6, 7, 8

*Silver v. Allard*,
16 F. Supp. 2d 966 (N.D. Ill. 1998) .................................................................................... 9

*Smykla v. Molinaroli*,
85 F.4th 1228 (7th Cir. 2023) .............................................................................................. 3

*Sternlicht v. Hernandez*,
  2023 WL 3991642 (Del. Ch. June 14, 2023) .................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ......................................................................................................... 3

*Weiland v. Illinois Power Co.*,
  1990 WL 267364 (C.D. Ill. Sept. 17, 1990) .................................................................... 9

**STATUTES**

8 Del. C. § 141(c) .................................................................................................................. 9

805 ILCS 5/7.80(b) ............................................................................................................. 11

805 ILCS 5/8.40 ............................................................................................................. 4, 9

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 5

Fed. R. Civ. P. 23.1 .............................................................................................................. 5

I.     INTRODUCTION

This is Plaintiff's third attempt to seize control of derivative claims relating to Abbott's production of infant formula in Sturgis, Michigan. Almost three years ago, Plaintiff sued (purportedly on Abbott's behalf), alleging that certain officers and directors breached their fiduciary duties in connection with a formula recall in 2022. The Court consolidated that lawsuit with similar cases. Plaintiff asked to be appointed the "lead" plaintiff in the consolidated action, but the Court denied his motion and appointed others instead. Then Plaintiff asked to serve alongside those lead plaintiffs—or permission to file his own action. The Court rejected that motion, too.

Ignoring those Orders, Plaintiff filed this new lawsuit alleging nearly identical causes of action against identical defendants. In his "new" Complaint, Plaintiff does not acknowledge the consolidated lawsuit, nor his unsuccessful attempts to lead it. He instead theorizes the "new" action somehow differs from the others because while the prior actions (including his own) alleged that pre-suit demand on Abbott's Board was futile, his latest lawsuit concedes demand was *not* futile, but contends the Board wrongfully refused a demand he sent. Plaintiff's latest effort fails, and his Complaint should be dismissed for three separate reasons.

***First***, as Plaintiff concedes, Abbott's Board did not "refuse" his demand; it deferred the demand pending resolution of, among other things, an investigation by a Special Litigation Committee ("SLC") formed by the Board in the existing consolidated derivative action. Plaintiff's lawsuit thus is premature.

***Second***, Plaintiff fails to meet the heavy burden to show the Board "refused" his demand in bad faith. The Board's deferral decision receives business-judgment rule protection unless Plaintiff alleges particularized facts creating a reasonable doubt about the Board's good faith and reasonableness. Plaintiff alleges no such facts. On the contrary, the only "fact" Plaintiff identifies

1

is not a fact at all, but a misstatement of applicable law. Plaintiff asserts that Illinois law did not permit the Board to form the SLC, but he ignores the statute that allows just that.

***Finally***, having previously argued that pre-suit demand on the Board was futile, Plaintiff cannot now contend that demand, in fact, was *not* futile and instead was wrongfully refused. For all these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Files a Derivative Complaint Alleging Demand Futility and Unsuccessfully Seeks to Be Appointed Lead Plaintiff

On October 7, 2022, purported Abbott stockholder Leon Martin filed a derivative lawsuit against certain Abbott officers and directors related to Abbott's 2022 recall of certain powdered infant formula produced at its Sturgis, Michigan facility. *See Martin v. Ford, et al.*, Case No. 1:22-cv-05513, Dkt. 1 (N.D. Ill. Oct. 7, 2022). Four months later, Plaintiff filed a nearly identical lawsuit. *See Steele v. Randall, et al.*, Case No. 1:23-cv-00850, Dkt. 1 (N.D. Ill.) ("*Steele I*"). Before filing *Steele I*, Plaintiff made no pre-suit demand on the Board. He instead alleged—in a *verified complaint*—that such a demand was futile. *Steele I* Compl. ¶¶ 170-191. And when he filed *Steele I*, Plaintiff identified that his suit related to the other pending derivative actions. *See In re Abbott Labs. Infant Formula S'holder Deriv. Litig.*, Case No. 1:22-cv-5513, Dkt. 21, 24.

After the Court granted reassignment of other related derivative suits, Plaintiff asked to be appointed lead plaintiff of a consolidated action. *In re Abbott*, Dkt. 66. The Court denied that motion, instead appointing Teamsters Local No. 710 Pension Fund and Southeastern Pennsylvania Transportation Authority as co-lead plaintiffs in *In re Abbott Laboratories Infant Formula Shareholder Derivative Litigation* ("Consolidated Derivative Action"). *In re Abbott*, Dkt. 86. In so ordering, the Court rejected Plaintiff's argument that he should lead the case because he was the only "shareholder of record" among the various plaintiffs. *Id.* Notably, the Court stated that

2

"the 'shareholder of record' requirement is not inflexible, and I am not persuaded that it meaningfully distinguishes plaintiffs." *Id.* at 2.

A month later, Plaintiff moved to require the newly appointed lead plaintiffs to add him to the complaint in the Consolidated Derivative Action, or in the alternative, to "modify the consolidation order to allow Mr. Steele to maintain his action separately." *In re Abbott*, Dkt. 96 at 1, 9. The Court denied that motion too, noting that it "remain[ed] satisfied that consolidation of all cases and leadership from the court-designated lead plaintiffs and counsel is the most appropriate method of case management." *In re Abbott*, Dkt. 106. In so ruling, the Court advised that "[a]ll stakeholders"—including Plaintiff—"must learn to work within this structure." *Id.*

### B. After Losing His Motion for Lead Plaintiff, Plaintiff Ignores the Court's Order and Files a New Action—This Time Alleging Demand Refusal

Rather than "work within" the structure ordered by the Court, Plaintiff instead sent Abbott's Board a letter on January 30, 2025 ("Demand") demanding that it (i) dissolve the SLC that had been formed to investigate the claims in the Consolidated Derivative Action, (ii) withdraw the SLC's then-pending motion to stay the Consolidated Derivative Action while it investigated, and (iii) investigate claims the Court had dismissed. *See* Ex. A.[1] As part of the Demand, Plaintiff resurrected an argument this Court already rejected—that the lead plaintiffs in the Consolidated Derivative Action "lack standing to pursue the claims" because they are not record shareholders. *Id.* at 22 n.5; *see In re Abbott*, Dkt. 86 at 2. The Demand also contended that "there is no authority

---

[1] Courts "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

3

under Illinois law for Abbott to form a SLC, nor delegate plenary, full, and exclusive authority to investigate and pursue the relevant shareholder derivative claims." Ex. A at 2.

Counsel for the Company responded to the Demand two weeks later. That response noted that both 805 Ill. Comp. Stat. 5/8.40 and the Company's bylaws authorized the formation of committees, and cited caselaw showing that Illinois permits the formation and empowering of special litigation committees. Ex. B at 2. But despite the Demand's flaws, the Board did not refuse it. Instead, the Company's response stated that the Board would "evaluate whether to bring the kinds of claims [Plaintiff] demands," but that "now is not an appropriate time to do so given the pendency of the SLC's investigation, the [Consolidated] Derivative Litigation, and the putative securities fraud class action, *Pembroke Pines Firefighters & Police Officers Pension Fund v. Abbott Laboratories*, No. 22-4661 (N.D. Ill.), all of which involve an overlapping and common nucleus of operative facts." *Id.*

Plaintiff did not respond. Instead, he filed this action—his second derivative lawsuit against the same directors and officers he sued in *Steele I*. The Complaint copies the *Steele I* Complaint almost verbatim, including asserting nearly identical causes of action against identical parties. *Compare, e.g.*, *Steele I* Compl. ¶¶ 38-94, *with* Compl. ¶¶ 39-95; Compl. ¶¶ 235-255 (pleading counts for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, and waste of corporate assets), *with Steele I* Compl. ¶¶ 192-212 (pleading identical counts with verbatim allegations). And like the *Steele I* Complaint (*Steele I* Compl. ¶ 2), the "new" Complaint asserts that "Illinois requires stockholders to be holders of record to bring derivative actions in the name of a company," Compl. ¶ 2, despite this Court previously rejecting that argument. *In re Abbott*, Dkt. 86 at 2.

4

In fact, the Complaint differs from the *Steele I* Complaint in only two ways. First, Plaintiff now alleges that the Board wrongfully refused the Demand, despite previously alleging that such a demand would have been futile. *Compare Steele I* Compl. ¶¶ 173, *with* Compl. ¶ 213-14. Second, Plaintiff alleges "that Illinois law does not permit the formation of a special litigation committee of the Board" and that "Abbott's bylaws . . . do not permit committees to have plenary authority." Compl. ¶¶ 212, 215. Yet despite the overwhelming similarities between his first lawsuit and his second, Plaintiff fails to mention *Steele I* in his Complaint, much less acknowledge that the Court consolidated his prior action with the existing, and still pending, Consolidated Derivative Action and appointed others as lead plaintiffs.

### III. ARGUMENT

Plaintiff's Complaint should be dismissed because he has not complied with applicable stockholder-demand requirements. *See* Fed. R. Civ. P. 23.1; 12(b)(6). Under Federal Rule of Civil Procedure 23.1, a putative derivative plaintiff must "'state with particularity' his efforts to obtain his desired action from the company's directors, and 'the reasons for not obtaining the action or not making the effort.'" *Lowinger v. Oberhelman*, 924 F.3d 360, 366 (7th Cir. 2019) (quoting Rule 23.1(b)(3)(A), (B)). Rule 23.1 imposes a pleading burden that is "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." *Miller v. Loucks*, 1992 WL 329313, at *4 (N.D. Ill. Nov. 5, 1992) (quoting *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991)); *see also McSparran v. Larson*, 2007 WL 684123, at *3 (N.D. Ill. Feb. 28, 2007); ("[T]he normally liberal pleading standards of the Federal Rules of Civil Procedure are heightened . . . by Rule 23.1"). Where, as here, Plaintiff sent a pre-suit demand to Abbott's Board, his Complaint must be dismissed unless he alleges particularized facts showing the directors wrongfully refused his demand under the law of the Company's state of incorporation—Illinois. *See In re Abbott Depakote S'holder Deriv. Litig.*, 909 F. Supp. 2d 984, 992 (N.D. Ill. 2012). "Illinois law follows

5

Delaware law" on demand refusal. *Id.*; *see also In re Abbott*, Dkt. 142 at 7 (similar). And in Delaware, a plaintiff who sends a pre-suit demand "effectively concedes" the "board is independent and able to respond." *Lowinger*, 924 F.3d at 366. "The board's decision to refuse that demand is thus protected by the business judgment rule." *Id.* This "combination of a heightened pleading standard and Delaware's business judgment rule puts plaintiffs in this kind of case between the proverbial rock and a hard place." *Id.*

Plaintiff's latest Complaint fails to meet his heavy burden for three independent reasons. ***First***, it is premature because the Board did not refuse Plaintiff's demand. ***Second***, Plaintiff fails to plead particularized facts suggesting the Board acted in bad faith in deferring his demand. ***Finally***, having filed a verified complaint alleging demand futility, Plaintiff cannot claim now that the Board wrongfully refused his Demand. *Compare Steele I* Compl. ¶ 173 ("A pre-suit demand on the Board of Abbott is futile and, therefore, excused.") *with* Compl. ¶ 214 ("The Company and/or Board's [demand] refusal was wrongful and contrary to law."); *Lowinger*, 924 F.3d at 366 (allegation of wrongful refusal "effectively concedes" demand was not futile).

### A. Plaintiff's Complaint Should Be Dismissed as Premature

The Complaint should be dismissed as premature because the Board did not refuse Plaintiff's pre-suit demand. Before filing this action, the law required Steele to give the Board "sufficient time to investigate the allegations and decide whether to bring suit or reject the demand.'" *Lowinger v. Oberhelman*, 2017 WL 1224524, at *3 (C.D. Ill. Mar. 31, 2017). And when shareholders fail to allow that time and instead race to the courthouse to claim the board rejected their demand, courts routinely dismiss the cases as premature. *See, e.g.*, *MacCoumber v. Austin*, 2004 WL 1745751, at *6 (N.D. Ill. Aug. 2, 2004) (dismissing wrongful-refusal action as premature where board deferred investigation into demand allegations until related state court action resolved); *Piven v. Ryan*, 2006 WL 756043, at *3 (N.D. Ill. Mar. 23, 2006) (dismissing

6

because plaintiff "sued prematurely" after board stated it "*will* consider your letter at a later point in time, as circumstances warrant").

Plaintiff followed the "file first" plan that other courts have rejected. Indeed, the Abbott Board did not reject his demand. Plaintiff admits this. He concedes the Company's response to the Demand "stated . . . that 'now is not an appropriate time to do so [investigate the facts and potential claims set forth in Plaintiff's litigation demand] given the pendency of the SLC's investigation.'" Compl. ¶ 219. In fact, that response said the Board "*will* evaluate whether to bring the kinds of claims" Plaintiff demanded, but it deferred that evaluation "given the pendency of the SLC's investigation, the Derivative Litigation, and the putative securities fraud class action, . . . all of which involve an overlapping and common nucleus of operative facts." Ex. B at 2. The entire premise of Plaintiff's lawsuit—that the Board refused the demand—thus is wrong, and the Complaint should be dismissed as premature. *See Piven*, 2006 WL 756043, at *3.

### B. Plaintiff's Complaint Should Be Dismissed Because It Fails to Allege Particularized Facts That the Board Deferred in Bad Faith

The Complaint should be dismissed because Plaintiff has not alleged particularized facts suggesting the Board deferred—much less rejected—his demand in bad faith. Compl. ¶¶ 209-224 (alleging wrongful refusal). Because a "board's rejection of a litigation demand is entitled to the protections of the business judgment rule," Plaintiff bears "the heavy burden of pleading particularized facts which, taken as true, raise a reasonable doubt that the refusal was a valid exercise of business judgment." *In re Kraft Heinz Demand Refused Deriv. S'holder Litig.*, 2024 WL 3493957, at *5-6 (Del. Ch. July 19, 2024) (internal quotation marks omitted). The "only way" a shareholder plaintiff can "overcome the business judgment rule's presumption is to allege particularized facts that create a reasonable doubt about the good faith and reasonableness of [the board's] investigation." *Lowinger*, 924 F.3d at 366 (internal quotation marks omitted).

7

Plaintiff does not come close to clearing this high pleading hurdle. He asserts that the Board's refusal was "wrongful and contrary to law" because "Abbott's bylaws do not permit it to grant plenary authority to an SLC." Compl. ¶ 220. These allegations fail for three different reasons.

*First*, the Company's response specified that the Board was deferring consideration of Plaintiff's demand because the resolution of certain pending, related claims could resolve Plaintiff's claims. Ex. B at 2. Specifically, both the Consolidated Derivative Action and a securities class action bring related claims about the same facts alleged in the Complaint— Abbott's production of powdered infant formula at the Sturgis plant.

Plaintiff acknowledged the Consolidated Derivative Action is a "related case" when it was filed. Dkt. 1-1 at 1. The Court did too, reassigning this action because it and the Consolidated Derivative Action both involve "Abbott's shutdown of the Sturgis plant due to infant formula contamination." *In re Abbott*, Dkt. 237. Further, the SLC is actively investigating the claims in the Consolidated Derivative Action. *In re Abbott* Dkt. 222 (partially staying Consolidated Derivative Action after Board appointed SLC to investigate remaining claims). That investigation may resolve the related claims, which would, in turn, resolve Plaintiff's claims. *Pivens*, 2006 WL 756043, at *4 (investigation into demand allegations could be "unnecessary" depending on outcome of related issues).

Far from bad faith, the Board's decision to defer demand while it dedicated crucial resources to the pending SLC investigation "was a prudent business decision." *Lowinger*, 924 F.3d at 368; *see also MacCoumber*, 2004 WL 1745751, at *6 ("The Board's decision to postpone its investigation is reasonable given that it is currently litigating related issues in state court.").

8

***Second***, Illinois law permits SLCs like the one the Board formed. Specifically, 805 Ill. Comp. Stat. 5/8.40 provides that "[i]f the articles of incorporation or by-laws so provide, a majority of the directors may create one or more committees, each to have one or more members, and appoint members of the board to serve on the committee or committees." Abbott's bylaws, in turn, state that "[a] majority of the Board of Directors may create one or more committees and appoint members of the Board to serve on the committee or committees." Ex. C Art. IV § 1. Together, these authorities permit Abbott to form committees, including special litigation committees. *See, e.g.*, *Weiland v. Illinois Power Co.*, 1990 WL 267364, at *3 (C.D. Ill. Sept. 17, 1990) (granting summary judgment for a special litigation committee "formed pursuant to the by-laws of" an Illinois corporation "and § 8.40 of the Illinois Business Corporation Act"); *Silver v. Allard*, 16 F. Supp. 2d 966, 971 (N.D. Ill. 1998) ("[B]oards of directors in Illinois are now statutorily authorized to create disinterested committees to address shareholders' complaints.").

Despite this statutory authority (which Plaintiff ignores), Plaintiff alleged in the Demand that "[u]nlike Delaware, which has a statute authorizing SLCs (see 8 *Del. C.* §141(c)), Illinois has no such statute." Ex. A at 2. But the two statutes are nearly identical:

| 8 *Del. C.* § 141(c) | 805 Ill. Comp. Stat. 5/8.40 |
|---|---|
| The board of directors may, by resolution passed by a majority of the whole board, designate 1 or more committees, each committee to consist of 1 or more of the directors of the corporation. | If the articles of incorporation or by-laws so provide, a majority of the directors may create one or more committees, each to have one or more members, and appoint members of the board to serve on the committee or committees. |

Both allow the Board to form committees, and neither uses the specific phrase "special litigation committee." Nor do they need to use that phrase. After all, special litigation committees are a longstanding feature of Delaware (and Illinois) law. Compl. ¶ 214; 8 *Del. C.* §141(c); *see, e.g.*, *In re Oracle Corp. Deriv. Litig.*, 808 A.2d 1206, 1212 (Del. Ch. 2002) ("The deference Delaware law

9

pays to the special litigation committee process . . . is among the many important policy choices that our state has made[.]").

***Finally***, and contrary to Plaintiff's argument, the Board did not grant the SLC "plenary authority." Compl. ¶¶ 215-17, 220. On the contrary, the Board limited the SLC's mandate to "exercis[ing] the sole and exclusive authority of the Board *with respect to the matters delegated to it*." *In re Abbott*, Dkt. 192-2 at 13 (emphasis added). Specifically, the Board empowered the SLC "to investigate and evaluate the claims asserted in the [Consolidated Derivative Action], and to prepare such reports, arrive at such decisions, and take such other actions *in connection with* the [Consolidated Derivative Action] as the Special Litigation Committee deems appropriate and in the best interests of the Company and its shareholders, in accordance with Illinois law." *Id.* (emphasis added). That tracks the standard authority of special litigation committees because it does not grant the SLC "plenary authority" over all matters entrusted to the full Board. *See, e.g.*, *Sternlicht v. Hernandez*, 2023 WL 3991642, at *20 (Del. Ch. June 14, 2023) (rejecting argument that a special committee's charter "gave the committee 'unfettered plenary power'").

Plaintiff has not carried his "heavy" burden to show that the Board deferred his demand in bad faith. The Board's decision thus receives "business judgment rule" protection, and the Complaint should be dismissed. *Lowinger*, 924 F.3d at 366.

### C. Plaintiff's Complaint Should Be Dismissed Because He Cannot Plead Demand Wrongfully Refused After Previously Alleging Demand Futility

Plaintiff's Complaint should be dismissed because he concedes demand on the Board was not futile after previously alleging in a verified complaint that demand *was* futile. *Compare Steele I* Compl. ¶ 173 ("A pre-suit demand on the Board of Abbott is futile and, therefore, excused.") *with* Compl. ¶ 214 ("The Company and/or Board's [demand] refusal was wrongful and contrary to law."). Plaintiff "cannot have it both ways." *Drachman v. Cukier*, 2021 WL 5045265, at *5

10

(Del. Ch. Oct. 29, 2021). Indeed, a derivative complaint "must allege with particularity the demand made, if any, to obtain action by the directors and *either* why the complainant could not obtain the action *or* why he or she did not make the demand." 805 ILCS 5/7.80(b) (emphasis added); *see also Miller*, 1992 WL 329313, at *5 ("Rule 23.1 basically sets forth *alternative pleading requirements* for standing to maintain a shareholder derivative suit." (emphasis added)).

Plaintiff thus had "a choice either to make demand or attempt to establish demand futility." *Boeing Co. v. Shrontz*, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992). He chose—two years ago—to allege demand futility. *Steele I* Compl. ¶ 173. That choice was "mutually exclusive" of his choice to make a pre-suit demand. *Dahle v. Pope*, 2020 WL 504982, at *6 (Del. Ch. Jan. 31, 2020). He cannot now change course and argue that the Board *could* consider a demand. Plaintiff is "not permitted to have his cake and litigate it, too." *Id.* The Complaint should be dismissed.

### IV. CONCLUSION

For these reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

| | |
|---|---|
| Dated: June 16, 2025 | Respectfully submitted,<br><br>*/s/ Eric R. Swibel*<br>Eric R. Swibel<br>Sean M. Berkowitz<br>Nicholas J. Siciliano<br>LATHAM & WATKINS LLP<br>330 N. Wabash Ave., Suite 2800<br>Chicago, IL 60611<br>(312) 876-7700<br>eric.swibel@lw.com<br>sean.berkowitz@lw.com<br>nicholas.siciliano@lw.com<br><br>*Counsel for Nominal Defendant* |